The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good morning. The court is taking up case number 4-2-3-0-5-9-7, People of the State of Illinois v. Parks. And counsel for the appellant, if you'll please state your name for the record. Sarah Inskeep. And counsel for the appellee, please state your name for the record. Matthew Goldman. Ms. Inskeep, you may begin with your argument. Thank you, Your Honor. May it please the court, counsel, my name is Sarah Inskeep with the Office of the State Appellate Defender and I represent Nick Parks. Initially, I do intend to confine my arguments today to issues 1 and 3 in the brief unless the court has questions about the two remaining arguments. In this case, when Nick was a suspect, he did the reasonable thing and hired an attorney. However, that attorney did not assist him in navigating the system. He didn't assist Elder Granger in four ways. He encouraged Nick to make incriminating statements without an agreement in place. He elicited incriminating statements. He contradicted his client and he made those contradictions using privileged information. Ultimately, Granger's actions actually made it worse for Nick than if he had not had counsel there during the interrogation. This claim I am raising under the Illinois Constitution because it provides greater protection than the federal constitution. Our Supreme Court said that in McCauley. The appellate court has agreed with that also in Risch. Both McCauley and Risch discussed that you're entitled to the presence and assistance of counsel and part of that assistance means you get the benefit of counsel. It's not possible to have the benefit of counsel if your attorney is actively not assisting you. If counsel doesn't have a duty or a certain standard they have to maintain during interrogations, then what is the purpose of having the right to counsel during an interrogation? To determine whether counsel was ineffective under the Illinois Constitution, I'm requesting the court to use the modified Strickland standard laid out in Risch. That standard is whether the counsel provided deficient conduct or counsel's conduct was deficient, pardon me, and if that deficient conduct prejudiced Nick. Regarding how his conduct was deficient, it goes against community norms. Defense attorneys know during an interrogation you don't contradict your client. You don't encourage them to make a statement without any sort of agreement or protections in place. And you don't help the police elicit more information and you certainly don't violate attorney client privilege. He also, some of his statements were then used by the police to obtain more information. For example, he said, it can't get much worse. You're already charged with murder. Unfortunately, it could get much worse because he could be convicted of murder, which is ultimately what happened. But that statement shows that, one, he was aware Nick was charged with murder. And two, that he couldn't avoid, Nick was not able to avoid being charged by making a statement in this situation. Nick also made it clear that he didn't want to speak to police before the interrogation began. Granger testified to that at the suppression hearing. And Granger testified that Nick explained his goals as wanting to avoid being charged and wanting to avoid being in jail. Obviously, that's most clients' goals. However, by the time they got to the interrogation where Granger still encouraged him to speak to police, those goals were no longer possible. He was already charged with murder. And as any competent defense attorney is aware, if your client is charged in murder, a murder case, it's very likely that they will remain in custody pending the trial. This deficient conduct also prejudiced Nick. I provided two possible prejudice analyses in this case. And he can satisfy either standard. First, he likely wouldn't have made a statement without Granger. And the second was there would have been a different outcome at trial if this had not been admitted. So regarding him likely not making a statement, as I said, he told Granger before the interrogation that he no longer wanted to make a statement. And then when you watch the interrogation video, there were multiple times where he asked counsel if he should continue speaking. He hesitated. He asked what he should say. And Granger told him to say all of it. All of that supports an inference that it's likely he wouldn't have made a statement without Granger's representation that day. Additionally, this was prejudicial during trial. The state argued in opening statement and closing argument that Nick wasn't credible. And part of the argument was that he apologized for lying to the police while he was represented by an attorney. The state specifically made sure to mention that he was represented by an attorney when he made that apology. If the state hadn't thought it was important, they wouldn't have argued it. And it's yet another example of determining why his credibility was important in this case. I apologize. Additionally, because the statement came in where his credibility had already been decimated by his own attorney, it would make it very difficult to be able to testify. Instead of coming up in front of a jury with a blank slate or just the state's arguments in an opening, he had to overcome all of these negative inferences that had already been shown to the jury, which came from his own lawyer. This wasn't… Ms. Inderstein, can I ask a question? Yes, Your Honor. Granger was eventually removed because of a per se conflict, correct? Yes, Your Honor. Did that conflict exist at the time he was representing the defendant in giving the statement? Your Honor, he was representing the other party. The court found that it was a per se conflict. The per se conflict wouldn't have actually happened unless that other client had testified at trial, which didn't happen here. So, he would have had to have shown an as-applied challenge, which did not happen in this case. Okay. Thank you. You're welcome. This counsel's decision to have his client speak to police wasn't strategic. He, first of all, had a valid trial defense. He had a valid defense that he was not the person who shot Jamie, which was presented, but he also had a viable self-defense claim, which I discussed in Issue 3. Having your client make those statements does not help you either get an acquittal, which is the ultimate goal, or to have lesser liability or cooperation. Josh cooperated in this case and received a sentence of 20 years. It's not reasonable to have your client make a statement in the hopes of an agreement when you have a viable strategy at trial, especially when your client has said that he does not want to make a statement. This issue also was preserved, excluding the portion where he violated attorney-client privilege. Our Supreme Court in Salomon made it clear that you don't have to have identical issues in trial and on appeal. The test is whether the crux of the legal issue is the same, and if the factual information is the same. Those are both accurate here. Counsel did argue that Granger provided ineffective assistance. He argued that that caused the statement to be involuntary. Additionally, he cited the relevant Illinois constitutional provisions in the motion that I used in the brief, and the factual information that was necessary was about what Granger said to the prosecutor, what Granger said with Nick, what was in the interrogation, what conversations Granger might have had or did have with the police officers, and all of that information was admitted in the suppression hearing here. Because it's preserved and it's a constitutional issue, the standard is whether it's harmless beyond a reasonable doubt, and that standard is also met here. There's a reason for the right to counsel. It's to help you, a layperson, navigate a very complex and difficult system where they might not understand the nuances. And in this situation, his attorney didn't help him do that. Also, confessions are very rarely harmless. Ultimately, in Salomon, the Supreme Court found that confession harmless, but that was because the evidence was all admitted elsewhere. However, none of Granger's comments in this case would have come in without this interrogation video. So, counsel, if I may just ask a question, with regards to the January 23rd police interview, is there other evidence in the record that the police knew about Brewer, White, or Witte, or would have known about them without that interview? I apologize, Your Honor. Go ahead. The police did know about Josh because when he went to the hospital, he told them that Nick Parks dropped him off at the hospital, and they had picked him up on a warrant. However, after that, he had said that John Wick shot him, so it's unclear if they would have still made the connection. For Brewer, and who was the third person? I had just indicated Brewer, White, and Witte. Thank you. For Brewer, it's unclear to me that she would have come up without this interrogation. In addition to Nick's statement being wrongly admitted in this case, trial counsel provided ineffective assistance when he didn't argue self-defense during trial. Self-defense is a defense available under accountability theories. Our Supreme Court indicated that in Cooper and Hicks, and the statute on accountability does not bar a defendant from asserting justified use of force defenses. There were multiple facts admitted here which supported a self-defense claim, which included that Jamie entered the car of his own will, Josh's testimony about Jamie being the aggressor, Jamie having the gun, them struggling over the gun, the gunshot residue on Jamie's left hand, Jamie's past as a drug dealer and the fact that Josh purchased drugs from him at the beginning of this interaction, and the forensic evidence from the car and the autopsy supported a finding that this was a struggle and that Nick wasn't the shooter. But despite all of those facts supporting self-defense being admitted, counsel didn't argue self-defense or present a self-defense instruction to the court. Instead, he seemingly missed that self-defense was an option here. That is deficient conduct. There's only a low bar needed. You only need some evidence to have a self-defense instruction. And the argument that counsel made instead wasn't actually legally viable. In Fernandez, our Supreme Court said that not knowing about a gun isn't a viable defense to accountability. So his defense, which was that the accountability was a red herring and that Nick wasn't guilty because he didn't know about the firearm, both were not viable because accountability functions under a common design process. So they didn't have to have the intention to commit a murder together. They only had to have a shared intention to commit some sort of unlawful act, which here there was evidence about a drug deal, possible intimidation and potentially robbery of Jamie if the jewelry had been in his possession. This also was prejudicial to Nick that he didn't raise this defense because counsel didn't raise a viable accountability defense. Nick didn't have an accountability defense presented at trial, and ultimately he was found guilty under accountability murder. We know that because the jury asked their question about whether he could be guilty if he didn't pull the trigger. And the trial court imposed a firearm enhancement used for accountability instead of Nick being the person who pulled the trigger himself. Ultimately, throughout this entire process, Nick received ineffective assistance from his attorneys, and these errors both prevented him from having a fair trial. He therefore asked this court to suppress his recorded statement, remand the case for a new trial. And if this court finds that suppressing a statement is not the appropriate remedy, Nick requests that the case be remanded for a new trial where he can raise self-defense. Trial counsel raised the issue of a suppression motion being denied in his post-trial motion. Yes, Your Honor, I concede I was incorrect about the constitutional exception applying in this case. So my initial argument is that the issue is preserved. And then if not, trial counsel was ineffective for not arguing this issue in his motion to suppress. If the court has no further questions, thank you. Thank you. You'll have time in rebuttal. Mr. Goldman, you may proceed with your argument. Thank you, Your Honor. I'm going to address counsel's arguments in the order in which he made them and focus on the issues that she presented. But again, if if your honors have any questions regarding the other issues, I'm certainly happy to address those. Beginning with defendants argument that the trial court incorrectly denied the motion to suppress defendants January 23rd, 2019 statement. There are several reasons why the court made the correct decision in this case to deny that motion to suppress. But I would argue that the simplest reason that this court can affirm is because this argument is forfeited. The basis for the motion to suppress is very clearly hinging on this conflict of interest issue. And while the motion itself, the written motion is relatively short. When you look at the actual transcript of the hearing, it's very clear that the the court issue here is that conflict of interest claim. Essentially, counsel is arguing that the waiver of the right to remain silent was somehow ineffective due to the fact that he didn't know his attorney had this conflict of interest. It's a very different argument from the argument now being made on appeal. The argument now being made on appeal, as your honor has just heard, is a much more normal, ineffective assistance of counsel claim. Essentially just arguing that attorney Granger was deficient in some way and that that deficiency prejudice the defendant. Ask a question. Yes, your honor. Is it true that counsel was suffering under the conflict per se conflict at the time he advised Mr. Parks to give his statements to the police? Your honor, I would agree with Miss Inskeep in this matter that at the time it appeared as though there would be a per se conflict of interest due to the fact that he was representing another individual who may need to testify in this trial. That didn't end it. Also, is it also true the defendant verbalized that he did not want to make a statement before the statement actually began on the January 23rd statement? Yeah, it's it's a bit unclear. Defendant certainly goes back and forth a couple of times as to whether or not he wants to make a statement or doesn't want to make a statement. And attorney Granger's testimony, insofar as it touches on this issue, speaks to the defendants at time being adamant about making a statement to try to avoid further consequences, at times being very nervous and deciding maybe he doesn't want to after all. So this is a circumstance in which the defendant has wide fluctuations in terms of whether or not he wants to make a statement. At times, he very clearly does. And at other times he makes statements that, depending upon your interpretation, could be either him being nervous or getting cold feet or, you know, at certain times deciding he doesn't before then, of course, again speaking. Is it true there's no evidence in the record that any statement was being made pursuant to any agreement with the state? That's true. I think the record is pretty clear that there was no agreement with the state's attorney's office. Thank you. Yes, Your Honor. If I may, also with regards to that January 23rd interview, and I made the inquiry of appellant counsel, but is there information that was obtained during that interview that was not obtained by the police through another avenue, if you will? For example, is there any evidence in the record that they would have known about Ms. Brewer if that information had not been obtained through the defendant's statement? Unfortunately, I don't have that information in front of me, Your Honor. I certainly would be happy to look further into the timeline of their investigation and whether or not there's evidence in the record that they had that information prior to or from a different source than the interview. But I don't have that information before me, Your Honor. All right. Thank you. Thank you. But, Your Honors, I would argue that this issue was clearly forfeited due to the changes in the factual basis for the claims and the differences in the legal basis for the claims. Counsel cites the Supreme Court case that makes it very clear that when they do have the same factual and legal underpinnings, essentially forfeiture can be excused or forfeiture doesn't exist. But in a case like this where the legal argument is different, I would argue that forfeiture still is a principle that this court should use to reject defendant's argument. And I think that's all the more clear under these circumstances because of the novel argument the defendant is now making on appeal. Defendant draws from sources that are out of state, sources like Rish that don't directly deal with the issues in this case that essentially are creating different kinds of legal principles about when an effective assistance of counsel may or may not apply. These are creative arguments, and this court may even find them somewhat persuasive, but these aren't necessarily arguments that would have been available to the attorneys in the trial court. For somebody to violate an objective standard, it should be something that is from the jurisdiction and that is written down in some opinion somewhere within that jurisdiction. For defense counsel now to say that the trial counsel should have been aware of these kinds of arguments to the extent that they violated an objective standard by not pursuing these arguments, I would say raises the bar of ineffective assistance of counsel to a degree that many attorneys will have to be scouring out of jurisdiction sources for these kinds of novel arguments. I think that that's an unreasonably difficult standard to meet. Is it true during the statement that Mr. Granger confronted Mr. Parks with inconsistencies, the source of which were attorney-client privileged conversations between he and Mr. Parks? So this is another problem with the issues not being raised in the trial court, and the answer is it seems to be the case that this came from discussions with the defendant, but because it was never delved into in any kind of hearing, that's a little bit difficult to say. What's also difficult to say is whether or not they had discussed certain limitations or exceptions to their privilege, certain things that they may have wanted to discuss or disclose. So, for example, we don't know if the defendant told Granger prior to the interview, if I start to misremember events, make sure you help me stay on track. We don't know that. It's possible they could have had the discussion. It's possible they didn't. That's why these issues are subject to forfeiture, and it's also why many of these issues are better safe for collateral attack, where the record can be developed and we can learn more about what was or wasn't discussed between the defendant and his attorney. Thank you. Thank you, Your Honor. And, Your Honors, even if you decide that this issue is not subject to forfeiture, this is an issue that – on which you should affirm based upon the merits of the argument itself. This is a situation in which attorney Granger was pursuing a clear trial strategy and one that appeared to be shared with the defendant, where they were attempting through this interview to shift blame away from the defendant and onto Joshua Witte. Now, to be completely clear, this obviously did not work out. This obviously resulted in the defendant being convicted at trial. But, as Your Honors are well aware, every time we get to this stage where we're having an appeal on one of these issues, it's always going to be a trial strategy that ultimately was not successful. But the question is, is it objectively unreasonable for an attorney to engage in this kind of tactic? And under the circumstances, with the information known to attorney Granger at the time, and taking into account the wishes of the defendant, where attorney Granger explained that the defendant was adamant, at least at certain times, that he wanted to make a statement, was it reasonable for attorney Granger to engage in this kind of interview alongside the defendant? And I would argue that nothing in the interview was objectively unreasonable. It's only with the hindsight of knowing what happens later at trial do we start to see that perhaps a different strategy may have benefited the defendant. But hindsight's always 20-20. What we should be focusing on is what was known to attorney Granger at the time, and was this a viable strategy at the time? And I would argue that it was a viable strategy. Additionally, there was no prejudice from the statement. I may interrupt you for that moment. When we talk about what was known at that time, there had just been the interview with Parks that attorney Granger participated in before this January 23rd interview. And it appears to me when we get further into the record, it seems pretty clear that attorney Granger, at the latest, if you will, during the January 23rd interview, started to put two and two together. Wouldn't you agree with that, that this involved Mr. Parks' vehicle? And, I mean, at that point, Mr. Parks has already been charged with murder by that January 23rd interview, and we've already had the prior interview with his other client. So, I mean, that's what he knew at that moment. I see what you mean. Based upon the testimony that was given at the motion to suppress hearing that touched on the topic that you're describing, I think you're right that eventually Granger does put two and two together, realizes that they're dealing with the same set of facts, and ultimately terminates the interview. At certain points towards the very end, it looks like maybe he's searching for the opportune moment to terminate where it doesn't make his client look shady or something of that nature. But I can't know for sure exactly what was in attorney Granger's mind at that moment, but it appears that that may have been something that motivated him to terminate the interview when he did so. And can we evaluate his deficient performance as to somewhat putting himself in that position with the facts he knew at that time and continuing with that interview? I would argue no, because it's a separate issue. The conflict of interest issue was one that was addressed in the trial court and certainly could have been brought up by the defendant on appeal if they believe that this was still a pertinent issue. But I think the attorneys argued at length about whether or not the conflict of interest would result in suppression. The court analyzed the case law and came to the conclusion that while there may have been some ethical issues related to the conflict of interest, this wasn't the sort of thing that would result in suppression of the statements. And again, I don't know the exact reasons for defense counsel making one choice or another, but clearly that that was not one of the issues raised on appeal. And so I would argue that that should not be something that this court considers in deciding whether whether to suppress or whether to affirm the court's decision. Thank you. But your honors, regarding to the question of prejudice, as I was stating, this is a statement that ultimately was became the crux of the defense at trial. Now, obviously, the jury didn't believe this story, but if it were to be accepted by the jury, this is something that could have been the key to his defense. It's very difficult to say what kind of prejudicial effect this this statement had on the defendant's trial when it ended up being the cornerstone of the defense in this case. The and I think it's very important to address defense counsel's argument about accountability and common design. The accountability law is very, very clear in Illinois that things done after the fact do not play into accountability. It can be it can result in other crimes like concealment of a homicidal death or obstructing justice. But for somebody to be accountable, it has to be something that they do beforehand. And the things that the defendant said in his story again, if they are to be believed, do not involve him committing crimes prior to or during the murder itself. He claims that he was just there to ask about some stolen jewelry. He paints himself as a innocent party in this whole thing and that he is taken by complete surprise when this fight breaks out and the gun goes off. So the statement itself, which ends up being the cornerstone of the defense, didn't prejudice the defendant, at least under these circumstances. And again, insofar as there might be some other alternative strategy that could have been presented. I would, again, argue that that is something best safe for collateral attack because it certainly does not appear anywhere in the record in this case. Your honors, turning to the third issue that defense counsel raised, the choice to not use the self-defense strategy at trial. I would argue that this is the classic example of trial strategy, whether or not to pursue an affirmative defense. Now, this this issue can be easily decided by this court by deciding whether or not it fits into the theory presented at trial. The theory at trial was that the defendant was not accountable for the shooting. The problem with attempting to introduce self-defense into that theory is that. Essentially, that is asking the jury to an acceptance in the alternative argument. Now, in the alternative arguments are very common among legal professionals. I've made several in the alternative arguments today. But for a jury to hear this, they would then have to accept the defense counsel saying he wasn't accountable. But if you believe that he was, here's why he's still not guilty. Now, among legal professionals, we can accept that kind of difficult problem. But for a jury member to accept that is a little bit more difficult to a jury that risks coming off is unconvinced by your own story. The jury might start to think, well, if the if the attorney doesn't believe in this, why should I? And so trial counsel made the strategic decision to instead of pursuing both of these possible theories at trial to pursue one. I would argue that even though perhaps other attorneys might have made a different decision under these circumstances, this was a very reasonable trial tactic. And for that reason, I would argue that this court should conclude that he was not ineffective for making this choice. For all of these reasons, your honors, we would ask that you affirm the trial court. And if there are no further questions, I will simply stand for the remainder on my brief. Thank you. Thank you, Miss Enske. Any rebuttal. Yes, your honor. To begin, counsel argued or the state argued that there's no objective standard here. That's that's quite simply not true. Rich is a case from within our jurisdiction. It's another Illinois appellate court. So that is a relevant case. Additionally, Padilla are the U.S. Supreme Court made it clear that you look at the decisive behaviors objectively reasonable. You look at actions within the community and standards. Those all support that his actions were not reasonable. Additionally, this issue was not forfeited. Counsel did make statements. During the during his closing arguments that. Illustrated that he was arguing ineffective assistance and that that ineffective assistance prevented Nick. From. It caused him to make this statement. For example, he said. An attorney that's doing their job properly knows to get a proper letter before telling their client to make a confession. He also said at the end of the day, judge, whether or not you grant the motion due to ineffective assistance of counsel or based on a conflict. That is something that is not a voluntary statement. So those grounds are in line. With what is raised on appeal. And finally, for the 3rd argument, it wasn't reasonable trial strategy. For counsel not to argue self defense in this case. Counsel's argument that Nick had no involvement and didn't know isn't a defense to accountability. The actions before all of this took place. Involved him setting up the meeting, calling Josh, calling Jamie driving the car. All of that is relevant and all of that was. Planned upon when they were. Intending to either purchase drugs, intimidate Jamie into getting the jury back or robbing jewelry, robbing Jamie for the jury as the. Was 1 of the state's arguments at trial. Additionally, the state argued that. The defense counsel's theory at trial contradicts a self defense claim. To find he was ineffective, it's not necessary that self defense be. In line with arguments he did make, it's important that he made arguments with facts that showed self defense and that is what happened here. And if the court has no further questions, we would ask you to reverse and. Remand for a new trial, thank you. There being none, the court will take the matter under advising advisement and this court stands in recess.